**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **DWUAN HAMMOND,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| | ) |
| **v.** | )   **No. 19-cv-2855-SHM-tmp** |
| | ) |
| **SYSCO CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Sysco Corporation's August 15, 2022 Motion for Summary Judgment (the "Motion"). (ECF No. 79.) Plaintiff Dwuan Hammond ("Hammond") responded on November 21, 2022. (ECF No. 93.) Defendant replied on December 5, 2022. (ECF No. 94.) For the following reasons, the Motion is **GRANTED** and Hammond's claims are **DISMISSED**.

**I.  Background**

This is an employment discrimination case. Hammond alleges racial discrimination. He claims Sysco violated Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981, ("§

1981") by failing to promote him,[1] by enrolling him in a Performance Improvement Plan ("PIP"), by terminating him, and by creating a hostile work environment. (ECF No. 18.)

Hammond began working at Sysco in 2000. (ECF No. 93-1 at ¶ 3.) During his time at Sysco, he worked as an Internal Auditor, Controller/Director of Finance of Sysco East Wisconsin Operating Company, VP/CFO of Sysco Grand Rapids Operating Company, VP/CFO of Memphis Operating Company, and Market Director of Revenue Management for the Mideast Region. (Id.) Hammond's roles have mostly focused on finance.[2] (Id. at ¶¶ 3-4.) Hammond spent approximately 18 months working for a Vice President of Operations to learn more about operations, and his role as Market Director provided him with additional sales experience. (Id. at ¶¶ 4, 8.)

In September 2015, Bill Mastrosimone ("Mastrosimone") selected Jason Calabrese ("Calabrese") for the Market VP/CFO

---

[1] Hammond brings failure to promote claims for the following positions: President of Memphis Operating Company; Executive Vice President in any market; Market Vice President/Chief Financial Officer ("VP/CFO"), Northeast Operating Company; Market VP/CFO, Mountain Central Operating Company; Market VP/CFO, South Operating Company; Market VP/CFO, Pacific Operating Company; Market VP/CFO, Midwest Operating Company; Director of Finance, Supply Chain; and Director of Finance, Field Planning.

[2] Sysco claims all of Hammond's positions before 2016 were finance positions. Hammond disputes that claim because he worked with the Vice President operations for 18 months and was recommended for the Executive Vice President program. Hammond does not specify when these events occurred. Whether they were before or after 2016, they are a small part of Hammond's overall experience at Sysco.

Northeast position because Calabrese had significant finance leadership experience. (Id. at ¶ 26.) Mastrosimone did not select Hammond because Hammond had less leadership experience and the experience he did have was in a smaller market. (Id. at ¶ 27.)

Sysco selected Roger Wilder for the Market VP/CFO Mountain Central position because Wilder had almost 20 years of financial leadership experience and had been Senior Director of Financial Planning and Analysis in Sysco's corporate office. (Id. at ¶ 32.) Hammond never applied for the position. (Id. at ¶ 33.)

Greg Bertrand ("Bertrand"), then Sysco's Senior Vice President of U.S. Food Service Operations, selected Charles "Cannon" Whitby ("Whitby") to be President of Sysco's Memphis Operating Company in early 2017. (Id. at ¶ 9.) Bertrand looked for candidates with substantial leadership experience in operations and sales, profit and loss responsibility, and large-team leadership. (Id. at ¶ 11.) Bertrand selected Whitby because Whitby was performing well as an Executive Vice President in one of Sysco's largest markets and had previously been the President at one of Sysco's competitors. (Id. at ¶ 12.) Hammond was not considered for the President role because he lacked the experience Bertrand was looking for. (Id. at ¶ 18.) Sysco looked for the same qualifications for the Executive

3

Vice President roles and did not choose Hammond because he lacked those experiences. (Id. at ¶ 15.)

In August 2017, Sysco selected Jim Procuniar for the Senior Director of Finance, Supply Chain role because he had 19 years of supply chain leadership experience. (Id. at ¶ 46.) In September 2017, Sysco selected Joy Hellwig for the Director of Finance, Field Planning role because she had substantial supply chain experience and performed better than Hammond in the interview. (Id. at ¶ 47.)

In October 2017, Sysco selected John Summers Miller for the role of Market VP/CFO South because Miller had 15 years of leadership experience, including four years as Vice President of Finance-Merchandising for one of Sysco's largest competitors. (Id. at ¶¶ 35, 36.) Hammond never applied for the position. (Id. at ¶ 37.)

In December 2018, Rich Johnston ("Johnston") selected Doug Walker ("Walker") for the Market VP/CFO Pacific position because he had 15 years of leadership experience and he had worked with Johnston in the past. (Id. at ¶ 39.)

In January 2019, Greg Keyes ("Keyes") selected Mark Lee ("Lee") for the Market VP/CFO Midwest position because Lee had existing relationships in the market and was successfully performing the role of CFO of Sysco's Chicago operating company. (Id. at ¶¶ 42, 43.)

4

In May 2019, Hammond was put on a performance improvement plan because of concerns about his performance and leadership.[3] (Id. at ¶¶ 57-59.) The plan did not affect Hammond's pay or responsibilities. (Id. at ¶ 60.) Sysco's concerns were documented in e-mails and meetings over at least 18 months. (Id. at ¶¶ 52-56.) Specifically, Hammond had not developed relationships with key people in his market.[4] (Id. at ¶ 55.)

In response to the COVID-19 pandemic, Sysco consolidated its leadership team resulting in the termination of approximately 160 employees. (Id. at ¶ 62.) Hammond was selected for termination in May 2020 because he ranked lowest among the employees in his position.[5] (Id. at ¶ 65.)

---

[3] Hammond disputes this fact, but his response is unrelated to Sysco's claim. Paragraph 57 claims that David DeVane ("DeVane"), President of the South Market, expressed frustrations about Hammond's performance and leadership. Hammond disputes this claim by asserting that Sysco creates artificial requirements for promotion. True or not, Hammond's response does not call Sysco's claim into question. In Paragraph 58, Sysco claims that DeVane did not know Hammond had complained about racial discrimination when DeVane criticized Hammond's leadership. Hammond disputes this fact but provides no basis for his dispute.

[4] Hammond disputes this fact, but his response is unrelated to Sysco's claim. Sysco claims that Ken Jaycox ("Jaycox") addressed leadership and performance shortcomings with Hammond, including Hammond's failure to develop relationships with key leadership members. Hammond responds by stating that Becca Abbate, a member of human resources, sent an e-mail discussing the need to move Hammond out of the company. True or not, Hammond's response does not bear on the truth of Sysco's claim.

[5] Hammond disputes this fact, but he contends it should be stricken because the witness was not disclosed during discovery. The witness is listed in Sysco's Second Supplemental Answers to Interrogatories. (ECF No. 94-7 at 3.)

## II.  Jurisdiction

District courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Plaintiff brings claims under Title VII and § 1981. (ECF No. 18 at ¶¶ 4-5.) The Court has jurisdiction.

## III. Standard of Review

Summary judgment is granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018). There is a dispute about a material fact if the evidence is such that a reasonable jury could return a verdict for the nonmovant. E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015)(en banc). Inferences must be drawn in the light most favorable to the nonmovant. Bledsoe v. Tennessee Valley Authority Board of Directors, 42 F.4th 568, 578 (6th Cir. 2022).

The nonmoving party must point to concrete evidence on which a reasonable juror could return a verdict in her favor; a district court will not "wade through and search the entire

record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989); accord Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); Fed. R. Civ. P. 56(c)(3).

Although summary judgment must be used carefully, it "is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" F.D.I.C. v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

Employment discrimination claims are evaluated under a three-step burden-shifting framework. Newman v. Federal Exp. Corp., 266 F.3d 401, 405 (6th Cir. 2001)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). A plaintiff must first set forth a *prima facie* case of discrimination. Id. The elements of a *prima facie* case differ based on the specific type of discrimination alleged. If a *prima facie* case is made, the burden then shifts to the employer to articulate a nondiscriminatory reason for its actions. Id. If the employer carries that burden, the plaintiff must prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. Id. (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253

(1981)). The ultimate burden of persuasion remains always with the plaintiff. Id.

## IV. Analysis

### A. Failure to Promote

A *prima facie* case of discrimination on a failure-to-promote theory requires a plaintiff to show 1) he belongs to a racial minority; 2) he applied and was qualified for a job or promotion; 3) he was considered and, despite his qualifications, rejected from the job; and 4) other similarly qualified employees who are not members of the protected class received promotions when he was denied a promotion. Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603, 614 (6th Cir. 2003). The burden of establishing a *prima facie* case is not onerous. Burdine, 450 U.S. at 253.

If a *prima facie* case is made, the burden then shifts to the employer to articulate a nondiscriminatory reason for its actions. If the employer carries that burden, the plaintiff must show that the employer's reason was a pretext for discrimination.

Typically, to establish pretext, the plaintiff must show by a preponderance of the evidence that the defendant's nondiscriminatory reason 1) had no basis in fact, 2) did not actually motivate the defendant's conduct, or 3) was

insufficient to warrant the challenged conduct. <u>Zambetti v.</u>
<u>Cuyahoga Cmty. Coll.</u>, 314 F.3d 249, 258 (6th Cir. 2002). The
plaintiff may also demonstrate pretext by offering evidence
that challenges the reasonableness of the employer's decision.
<u>White v. Baxter Healthcare Corp.</u>, 533 F.3d 381, 393 (6th Cir.
2008). If the fact finder can conclude that a reasonable
employer would have found the plaintiff to be significantly
better qualified for the job, but this employer did not, the
fact finder can conclude that a consideration such as
discrimination influenced the decision. <u>Aka v. Washington Hosp.</u>
<u>Ctr.</u>, 156 F.3d 1284, 1294 (D.C. Cir. 1998). A finding of
unreasonableness requires that the plaintiff was a plainly
superior candidate or, if the plaintiff was only as qualified
as the individual chosen, other probative evidence of
discrimination. <u>Bartlett v. Gates</u>, 421 Fed. App'x 485, 490-91
(6th Cir. 2010). In assessing qualifications, a plaintiff's
subjective view of his qualifications relative to those of
other employees is insufficient to establish discrimination.
<u>Douglas v. Int'l Auto. Components Grp. N. Am., Inc.</u>, 483 F.
App'x 178, 181 (6th Cir. 2012).

### 1. Claims as to All Positions

Hammond makes a series of claims that the Court construes
to apply to each of his failure-to-promote claims. The Court
analyzes them here and does not recount them for each position.

9

Hammond claims Sysco had a culture of discrimination. (ECF No. 93 at 2-4.) As evidence, he provides his own statement that Sysco has not had a person of color in a senior leadership position in its fifty-year history. (Id. at 2.)

A claim that a general culture of discrimination prevented a particular employee from receiving a promotion is a disparate impact claim. See Hawkins v. Memphis Light Gas & Water, 520 Fed. App'x 316, 322 (6th Cir. 2013). To establish a *prima facie* case of disparate impact, a plaintiff must present statistical analysis about the number of qualified members of the protected class who applied for the positions in question. Id. Because Hammond has not provided that evidence, his disparate impact argument does not support his discrimination claims.

Hammond claims that senior leadership wanted to find a way to get rid of him. (ECF No. 93 at 2.) The e-mail Hammond uses to support his claim states that a Senior Human Resources Director wanted to discuss her recommendation of firing Hammond based on concerns about his performance. (ECF No. 93-3, Ex. B-4.) The plain text of the e-mail contradicts Hammond's characterization of it.

Hammond claims that he received "exceptional performance feedback and was considered Significantly Above Target." (ECF No. 93 at 1.) Hammond cites a single review from 2014. (ECF No.

93-4, DeVane Deposition at 35:18-23.) He has received numerous negative reviews since then.[6] (ECF No. 93-1 at ¶¶ 52-59.) Hammond's evidence does not support his contention that he was generally regarded as exceptionally qualified.

### 2. President of Sysco's Operating Company

Although the burden of establishing a *prima facie* case is low, a plaintiff fails to establish a *prima facie* case if he lacked the experience required for the job. Cleveland v. S. Disposal Waste Connections, 491 F. App'x 698, 703-04 (6th Cir. 2012). Hammond does not dispute that Bertrand, the decisionmaker for the Operating Company President position, wanted a candidate with substantial leadership experience in sales or operations, profit and loss responsibility, and large team leadership. (ECF No. 93-1 at ¶ 11.) Hammond does not dispute that Bertrand believed Hammond lacked that experience and was unqualified for the position. (Id. at ¶ 18.) There is evidence Hammond was enrolled in an executive development program and spent at least a year training with a vice president of operations. (ECF No. 93, Ex. 3.) Although that experience may have improved Hammond's qualifications, they

---

[6] Hammond disputes these facts, but his responses are unrelated to Sysco's claims. His responses to Paragraphs 57-59 are detailed in Footnote 3. His response to Paragraph 55 is detailed in Footnote 4. He disputes Paragraphs 53, 54, and 56, citing an e-mail in which Jaycox purportedly praises Hammond's abilities. The e-mail does not praise Hammond, so it does not challenge the alleged fact. Hammond does not dispute Paragraph 52.

were not the type of experience Bertrand said he was looking for.

Even if Hammond could establish a *prima facie* case, Sysco has articulated a legitimate, non-discriminatory reason for its employment decision: Whitby, unlike Hammond, had the experience Bertrand was looking for. (ECF No. 93-1 at ¶ 18.) Because Sysco has articulated a legitimate reason not to promote Hammond, he must show that the reason is a pretext for discrimination. Newman, 266 F.3d at 405. In the context of a pretext analysis, "evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact." Hawkins, 520 F. at 319-20. The burden is higher when a management position is at issue. Id. at 320.

Hammond does not dispute that Whitby had been Vice President of one of Sysco's largest operating companies and the President of one of Sysco's competitors. (ECF No. 93-1 at ¶ 12.) Hammond claims that he had more experience at Sysco because most of Whitby's experience was at another company. (ECF No. 93 at 4.) Hammond also claims that Whitby's experience at a senior leadership level was minimal. (Id.) How Sysco values experience at another company compared to in-house experience is not for the Court to second-guess. See McQueen v.

Barr, 782 F. App'x 459, 463 (6th Cir. 2019) (explaining that courts do not substitute their judgment for management's when comparing candidates' qualifications). Nor is the amount of senior leadership experience necessary for the role in question. Even factoring in Hammond's participation in the development program and training with a vice president of operations, Hammond cannot show that he was significantly more qualified than Whitby.

Hammond cites an e-mail purportedly stating Hammond was the most qualified person for the job and company data comparing the performance of Hammond's market to other markets to support his claim that Sysco's reasons for selecting Whitby were a pretext for discrimination. (ECF No. 93-1 at ¶¶ 16, 17, 22, 23.)

The e-mail says, "Dwuan, you are clearly the best person to calibrate and recommend the course of action. I'm fully supportive and please enroll Trey [Kidd, South Market Vice President, Field Deployment] and the rest of us as needed to help." (ECF No. 79-1 at 52.) The e-mail is part of a chain of e-mails between Hammond and Jaycox. Hammond first asks Jaycox to outline the contents of a conversation they had in person. (Id. at 54.) Jaycox writes that they talked about concerns with Hammond's leadership engagement and how Hammond might improve

his leadership. (Id. at 53.) Hammond responds by asking if he can try a different method of improving his leadership before trying Jaycox's suggestion. (Id.) Jaycox responds with the e-mail quoted in full above.

Given the context of the conversation, Jaycox's statement is to the effect that Hammond is the best person to decide how he can improve his leadership performance. It is not general praise for Hammond or testimony to his qualifications for a particular position. The e-mail does not support Hammond's claim that hiring Whitby based on his superior qualifications was a pretext for discrimination.

Hammond presents evidence that the market in which he was working outperformed other markets. (ECF No. 93-2, Ex. A-15.) That evidence is a single week of data. (Id.) The extent to which Hammond was responsible for that performance is also in question. Sysco disputes that Hammond's market was the best performer. (ECF No. 94-1 at ¶ 22.)

At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmovant. Bledsoe, 42 F.4th at 578. Even viewing Hammond's evidence in the light most favorable to him, it would not be enough to establish pretext. Even if the data represented a significant amount of time and Hammond were primarily responsible for the good performance, he

would lack key experience that Whitby had. Hammond was not a plainly superior candidate. Because he was at best as qualified as Whitby, he would need to show other probative evidence of discrimination to establish pretext. Bartlett, 421 Fed. Appx. at 491. He has not.

Hammond states in his deposition that Bertrand and DeVane expressed discriminatory animus towards him. (ECF No. 79-6, Hammond Deposition at 60:10-62:11, 72:1-18, 75:11-77:6, 78:20-79:23, 83:22-85:20.) Hammond's claims are based on comments made by Bertrand and Devane, such as asking Hammond to rate his emotional intelligence or telling him not to use his hands during presentations. (Id.) Ambiguous remarks that do not directly invoke race are insufficient evidence of pretext. See, e.g., Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1096 (6th Cir. 1996).

Hammond cannot satisfy any of the grounds for establishing pretext. His claim for failing to promote him to the President position is **DISMISSED.**

### 3. Executive Vice President

Hammond does not dispute that Bertrand, the decisionmaker for the Executive Vice President positions, wanted a candidate with substantial leadership experience in sales or operations, profit and loss responsibility, and large team leadership. (ECF

No. 93-1 at ¶ 15.) Hammond does not dispute that Bertrand believed Hammond lacked that experience and was unqualified for the position. (Id.) There is evidence Hammond was enrolled in an executive development program and spent at least a year training with a vice president of operations. (ECF No. 93, Ex. 3.) Although that experience may have improved Hammond's qualifications, they were not the type of experience Bertrand said he was looking for. Hammond cannot establish a *prima facie* case that he should have been promoted to the Executive Vice President positions. His claims for failing to promote him to the Executive Vice President positions are **DISMISSED**.

### 4. Market VP/CFO Northeast

Hammond can establish a *prima facie* case for failing to promote him to the Market VP/CFO Northeast position. Sysco claims it hired a more qualified candidate. (ECF No. 79 at 10-11.) Specifically, Sysco claims that Mastrosimone, who was in charge of deciding who to hire, decided that Calabrese, who was selected, had more finance leadership experience than Hammond and had experience in a larger market. (ECF No. 79-2 at ¶¶ 26-27.) Hammond admits that Calabrese was selected because of the qualifications Sysco cites. (ECF No. 93-1 at ¶ 26.)

Because Sysco has proffered a legitimate, non-discriminatory reason for failing to promote him, Hammond must

16

offer evidence of pretext. <u>Newman</u>, 266 F.3d at 405. Hammond
again claims he should have been chosen because of an e-mail
purportedly showing he was the most qualified person for the
job and the performance of his market relative to other
markets. (ECF No. 93-1 at ¶¶ 27, 41.)

For the reasons discussed above, the e-mail does not
support Hammond's claim. The market data, although relevant, is
not enough to outweigh the evidence that Calabrese had more
experience in the areas Sysco decided were relevant for the
position. As with the President position, the market data, at
best, create the possibility that Hammond and Calabrese were
similarly qualified. Because Hammond does not provide
additional probative evidence of discrimination, he cannot
establish a genuine dispute about pretext.

Hammond also claims Calabrese was selected because
Mastrosimone knew Calabrese's father. (ECF No. 79-4, Ex. 1-D.)
Charges of nepotism are not evidence of discrimination under
Title VII. <u>Betkerur</u>, 78 F.3d at 1096.

Hammond's arguments are insufficient to establish pretext
by a preponderance of the evidence. Hammond's claim as to the
Market VP/CFO Northeast position is **DISMISSED.**

### 5. Market VP/CFO Mountain Central & Market VP/CFO South

Hammond admits he did not apply for the Market VP/CFO Mountain Central or the Market VP/CFO South positions. (ECF No. 93-1 at ¶¶ 33, 37.) Because he did not apply, Hammond cannot establish a *prima facie* case of discrimination.[7] His claims are **DISMISSED.**

### 6. Market VP/CFO Pacific

Hammond can establish a *prima facie* case for failing to promote him to the Market VP/CFO Pacific position. Sysco claims it chose a more qualified candidate. (ECF No. 79 at 10-11.) Hammond admits that Walker was selected because of the qualifications Sysco identified. (ECF No. 93-1 at ¶ 39.) Walker had a senior leadership position in Sysco's finance department, had 15 years of finance leadership experience, and had successfully worked with Johnston, who was in charge of filling the position, in the past. (Id.) Despite Walker's qualifications, Hammond again claims he should have been chosen because of the e-mail purportedly showing he was the most qualified person for the position and the performance of his market relative to other markets. (Id. at ¶¶ 27, 41.)

---

[7] Hammond argues Sysco waived the opportunity to challenge his *prima facie* case because Sysco did not provide reasons for its challenge. (ECF No. 93 at 10-11.) Sysco challenged Hammond's *prima facie* case on the grounds that he admitted to not applying for some of the positions for which he alleged discrimination. (ECF No. 79-1 at 12, 13.)

For the reasons discussed for the Market VP/CFO Northeast position, the e-mail and market data are not sufficient to establish pretext. Hammond's discrimination claim as to the Market VP/CFO Pacific position is **DISMISSED**.

### 7. Market VP/CFO Midwest

Hammond can establish a *prima facie* case for failing to promote him to the Market VP/CFO Northeast position. Sysco responds that it hired a more qualified candidate. (ECF No. 79 at 10-11.) Specifically, Sysco claims that Keyes, who made the hiring decision, chose Lee because Lee was successfully performing as a CFO and had strong relationships with key individuals in the Midwest market. (ECF No. 79-1 at 14.) Sysco claims Hammond's relationships in the Midwest market were weaker because he had not worked there in four years. (Id. at 14-15.)

To establish pretext, Hammond cites the same evidence he used for the Market VP/CFO Northeast and Market VP/CFO Pacific positions: the Jaycox e-mail and the allegedly superior performance of Hammond's market. (ECF No. 93-1 at ¶ 44.) Hammond's arguments are unavailing for the reasons discussed above. His discrimination claim for failure to promote him to the Market VP/CFO Midwest position is **DISMISSED**.

### 8. Director of Finance Positions

A *prima facie* case of discrimination requires the plaintiff to show an adverse change in his conditions of employment, such as reduced salary, a less distinguished title, or significantly diminished responsibilities. Love v. Electric Power Bd. of Chattanooga, EPB, 392 Fed. Appx. 405, 408 (6th Cir. 2010). Failure to receive a lateral move is not enough. Id. Hammond stated in his deposition that the Director of Finance positions were a step down from his position at the time. (ECF No. 79-6, Ex. 3, Hammond Deposition at 207:6-208:6.) Hammond disputes saying that the positions were a step down, claiming that the statement was made by a witness who was not disclosed in discovery or the initial disclosures. (ECF No. 93-1 at ¶ 48.) Because the statement was made by Hammond himself, his objection is unavailing. Because the positions were a step down, Hammond did not suffer an adverse change in his employment by failing to obtain them. He has not established a *prima facie* case.[8] His claim is **DISMISSED**.

### 9. Reliance on Caselaw

Hammond claims his failure-to-promote claims should survive summary judgment based on Sixth Circuit precedent. (ECF

---

[8] As discussed above, Hammond's claim that Sysco waived the opportunity to challenge his *prima facie* case is incorrect. (ECF No. 79-1 at 16.)

No. 93 at 15-18 (citing White, 533 F.3d at 384, 392; Risch v.
Royal Oak Police Dept., 581 F.3d 383, 387-88 (6th Cir. 2009).)
Neither case controls the outcome here.

In Risch, the Sixth Circuit reversed the district court's
grant of summary judgment because the plaintiff was arguably
more qualified than those selected for the job and there was a
pattern of discriminatory remarks within the company. Risch,
581 F.3d at 391-94. That is not this case. The claim that
Hammond was more qualified than those selected is weaker than
the claim that Risch was more qualified than those promoted
instead of her. Risch had higher performance scores in certain
categories than those selected. Id. at 392. Here, Hammond
lacked key experience in many of the areas Sysco was looking
for. More importantly, although Hammond alleges that Sysco has
a lack of diversity amongst its senior leadership, the record
of derogatory statements made to women in Risch is not present
in this case. Because the evidence here is weaker than in
Risch, Risch is not on point.

In White, the Sixth Circuit found a genuine dispute about
pretext based on two factors. 533 F.3d at 394-95. First, the
plaintiff arguably had superior qualifications than the person
chosen for the job because the plaintiff had experience the
chosen candidate did not have. Id. at 394. Second, the

21

defendant's stated reasons for failing to select the plaintiff relied largely on subjective assessments from the plaintiff's interview, which the Sixth Circuit concluded were subjective and could be intended to mask the discrimination. Id. at 394-95. Those factors are not present here. Sysco applied more objective criteria: leadership experience in sales or operations, profit and loss responsibility, and large team leadership. Hammond's experience was primarily in finance. (ECF No. 93-1 at ¶¶ 4, 11.) He had only recently started to gain experience in operations and sales. (Id. at ¶ 11.) Hammond lacked the experience the people selected had. Sysco's stated reasons include undisputed, objective facts, rather than subjective evaluations. White is not on point.

### B.    Enrollment in Performance Improvement Plan

Hammond claims that he filed a discrimination claim in March 2019 and, in retaliation, was placed on a PIP in May 2019. (ECF No. 93 at 21.) In the Sixth Circuit, the evidentiary weight given to the temporal proximity between the protected activity and the alleged retaliatory event depends on the time between the two events:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection.... But where some time elapses between when the employer learns of a protected

22

activity and the subsequent adverse employment
action, the employee must couple temporal proximity
with other evidence of retaliatory conduct to
establish causality.

Robinson v. Quicken Loans, LLC, No. 21-1392, 2022 WL 4234072,
at *7 (6th Cir. Sept. 14, 2022)(citing Mickey v. Zeidler Tool &
Die Co., 516 F.3d 516, 525 (6th Cir. 2008)). The Sixth Circuit
has not clearly decided what amount of time is "very close,"
but the cases discussed in Mickey address shorter intervals
than the two months that elapsed here. Mickey, 516 F.3d at 524
(citing cases that found temporal proximity alone was
sufficient where 13 days elapsed, less than three weeks
elapsed, and zero days elapsed between the protected activity
and the retaliatory conduct). The Mickey Court also explained
that the reason temporal proximity alone is sufficient in some
cases is that, where there is immediate retaliation, there is
little chance the plaintiff will have other evidence. Id. at
525.

This is not a case where temporal proximity alone is
sufficient. The two months that elapsed between the protected
activity and the alleged retaliation were sufficient for
Hammond to have other evidence. He must show evidence in
addition to temporal proximity.

Hammond cites the temporal proximity of the PIP to the e-
mail and that meetings about the PIP were cancelled and never

rescheduled as evidence that the PIP was retaliatory. (ECF No. 93 at 21 (citing Ex. A, Hammond Deposition at 150:2-14).) Hammond's claim that meetings about the PIP were cancelled and never rescheduled is contradicted by his deposition testimony that, although some meetings were cancelled, Trey Kidd attended about half of the meetings to discuss Hammond's performance issues and how to address them. (ECF No. 94-3 at 11, Hammond Deposition at 122:1-16.)

The only remaining support for Hammond's claim is the temporal proximity between the e-mail and the PIP. Hammond does not dispute that his retaliation claim is based solely on the timing of the PIP relative to his e-mail. (ECF No. 93-1 at ¶ 61.) Because temporal proximity is insufficient to establish a causal connection in this case, Hammond's retaliation claim is **DISMISSED.**

### C.   Termination

Hammond can establish a *prima facie* case that his termination was discriminatory. Sysco responds that Hammond was terminated as part of a corporate reorganization initiated in response to the COVID-19 pandemic that resulted in the dismissal of approximately 160 employees. (ECF No. 79 at 19.) Because Sysco has articulated a nondiscriminatory reason for terminating Hammond, Hammond must establish that Sysco's

alleged reason is a pretext for discrimination. <u>Newman</u>, 266
F.3d at 405.

Hammond disputes Sysco's explanation because 1) he did not
receive a negative performance review before the negative
review he received in 2020, 2) his termination occurred shortly
after he sent an e-mail responding to a letter from Sysco's CEO
about the murder of George Floyd (the "Floyd e-mail"), and 3)
at the time of his termination, his market was performing
better than any of Sysco's other markets. (ECF No. 93 at 22.)

Hammond's arguments do not satisfy his burden to show
pretext, which requires that the employer's given reason had no
basis in fact, did not actually motivate the defendant's
conduct, was insufficient to motivate the challenged conduct,
or was unreasonable. <u>Zambetti</u>, 314 F.3d at 258; <u>White</u>, 533 F.3d
at 393.

Hammond does not effectively dispute the facts underlying
Sysco's explanation for terminating him: that Sysco conducted a
corporate reorganization in response to the COVID-19 pandemic
that required terminating approximately 160 employees and that

Hammond was selected for termination because he ranked lowest among employees with his position.[9] (ECF No. 93-1 at ¶¶ 62-65.)

Hammond has not shown that a reasonable jury could find that Sysco's stated reasons did not actually motivate its decision. That requires a showing that the illegal reason is more likely than the proffered reason. Joostberns v. United Parcel Services, Inc., 166 Fed. App'x 783, 790-91 (6th Cir. 2006). Despite his claims to the contrary, Hammond received negative performance reviews well before he sent the Floyd e-mail. (ECF No. 93-1 at ¶¶ 62-69.) Sysco decided to terminate Hammond in May 2020. (ECF No. 79-2 at ¶ 65.) Hammond did not send the e-mail until June 8, 2020. The e-mail could not have affected Sysco's decision. (Id. at ¶ 69.)

Hammond's strongest evidence is the report showing that the South Market was doing better than other markets when Hammond was terminated. (ECF No. 93-2, Ex. A-15.) Sysco challenges Hammond's evidence on three grounds: that Hammond was not solely or primarily responsible for the South Market's

---

[9] Hammond lists these facts as disputed, but his responses do not specifically dispute the facts stated. In response to the fact that Sysco conducted a corporate reorganization, Hammond says his market was performing better than other markets. True or not, that does not call into question the fact of the reorganization. Hammond disputes the fact that he was ranked lowest among employees with his job position because the source of that information, Kelly Melvin ("Melvin"), was not disclosed in discovery or the initial disclosures. Melvin was disclosed to Hammond. (See ECF No. 94-7, Ex. 6.)

performance, that the data Hammond submits is for a single week and does not reflect long-term performance, and that the referenced financial information was not relevant to Sysco's termination decision. (ECF No. 94-1 at ¶ 22.) Sysco's arguments are well-taken, but because this is a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmovant. Therefore, the Court infers that the data represent a meaningful amount of time; Hammond, as Market Director of Revenue Management, was primarily responsible for improving profit margins, (ECF No. 93-1 at ¶ 3), and contributed meaningfully to that performance; and the performance was relevant to the termination decision.

Even considering these inferences, a reasonable jury could not find by a preponderance of the evidence that Sysco's stated reasons were a pretext for discrimination against Hammond. That Hammond's market performed well does not show that Sysco's need to cut employees in response to the pandemic was pretextual. Hammond's evidence does not show that Hammond was unfairly chosen as one of the people to be terminated. Performance was one among several factors considered in the termination decisions. (ECF No. 93-1 at ¶ 65.) Even assuming Hammond was primarily responsible for the South Market's performance and that performance was for a meaningful amount of time, his

performance reviews demonstrated concerns about his leadership and results, which were identified as factors in the termination decision.[10] (ECF No. 93-1 at ¶¶ 55-58, 65.) For the same reasons, a reasonable jury could not find that Sysco's reasons for terminating Hammond were unreasonable.

Hammond has not shown that Sysco's reasons for termination were insufficient. A reduction in force and a poor performance review are sufficient to support termination. Lefevers v. GAF Fiberglass Corp., 667 F.3d 721, 726 (6th Cir. 2012). As discussed above, Hammond does not dispute that Sysco underwent a reduction in force or that he received a negative review.

Because Hammond fails to allege facts that could establish that Sysco's explanation for termination was a pretext, his discrimination claim based on termination is **DISMISSED**.

### D.  **Hostile Work Environment**

"A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Bowman v. Shawnee State University, 220 F.3d 456, 463 (6th Cir. 2000)(citing Harris v. Forklift Sys.,

---

[10] Hammond disputes these claims, but his response is unresponsive for the reasons discussed in Footnote 6.

Inc., 510 U.S. 17, 21 (1993)). Hammond contends generally that he experienced hostility and disparaging remarks from co-workers and supervisors after he sent the Floyd e-mail, but he cites no evidence to support his contention. (ECF No. 93 at 23.) He does not dispute that his hostile work environment claim is based entirely on the discrete acts alleged in his Complaint. (ECF No. 93-1 at ¶ 70.) Because Hammond's only evidence is the adverse employment decisions and because he has not established that those decisions were discriminatory, his hostile-work-environment claim is **DISMISSED.**

V.   **Conclusion**

For the foregoing reasons, the Motion for Summary Judgement is **GRANTED** on all of Hammond's claims. Hammond's claims are **DISMISSED.**

So ordered this 31st day of March, 2023.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE